UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

**FILED**

MAR - 6 2015

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

Case No.

HASSAN A. ABBAS, ESQ. *19. Don Carlos De.*
Individually, and on behalf of
All others similarly situated, *Hanover Park, IL 60133*
*tel 630 237 0621*

    *Plaintiff*

vs.

BUNDESREPUBLIK DEUTSCHLAND
a/k/a FEDERAL REPUBLIC OF GERMANY;
JPMORGAN CHASE & CO.

    *Defendants*
_____/

Case: 1:15-cv-00332
Assigned To : Leon, Richard J.
Assign. Date : 3/6/2015
Description: Pro Se Gen. Civil
**Class Action**

## COMPLAINT

1.    This is a class action brought by Plaintiff, Hassan Abbas, on behalf of himself and a class of holders of bearer bonds issued by Germany which were underwritten and sold in the United States by defendant, JPMorgan Chase & Co., who is the designated Redemption and Paying Agent on the bonds which are payable in Manhattan, New York, at the offices of JPMorgan.  The bonds are known as the "Dawes" and "Young" bonds, named after Senator Dawes and Senator Young, and the German international loans.

2.    The complaint involves Germany's intentional default on his sovereign debt and relates to Germany's violations of her contractual and legal obligations for payment of principal and interest.  The complaint involves JP Morgan Chase & Co.'s violations of fiduciary and legal obligations as the Redemption and Paying Agent.  Germany and JPMorgan have been unjustly enriched by wrongfully expropriating Plaintiff's money and by failing to pay the principal and interest owing to Mr. Hassan Abbas and others similarly situated.

1

3.     This matter also involves the "Non-Self-Executing" "1953 Treaty", found at 4 U.S.T. 885, between the United States ("U.S.") and Germany, a treaty that does not give rise to enforceable federal law, and has been systematically misapplied by U.S. courts (including the 7th Circuit) in violation of the Supreme Court mandate of *Medellin v. Texas* 552 U.S. 491 (Fn. 2) (2008) and contrary to Mr. Hassan Abbas' fundamental rights embedded in the United States Constitution.

4.     This matter also involves Germany's violations of international law and violations of the following laws and international treaties, including, but not limited to: (a) The Agreement on German External Debt 1953, 4 U.S.T. 443; (b) The Vienna Convention on the Law of Treaties 1969; and (c) The Validation Procedures Treaty, 4 U.S.T. 797; and (d) The Second Implementing Ordinance; and (e) The German Validation Law 1952.

## DESCRIPTION OF THE PARTIES

5.     Plaintiff, HASSAN ABBAS, (hereinafter "Abbas") with address at 19 Don Carlos Drive, Hanover Park, Illinois, 60133, and is the equitable owner and/or holder and/or bearer of the Dollar denominated German gold bearer bonds known as the Young bonds or Dawes Bonds , and others such as the Rheinelbe Union bonds, and all German bearer bonds guaranteed by Germany.

6.     Defendant, BUNDESREPUBLIK DEUTSCHLAND a/k/a the Federal Republic of Germany is a sovereign state (hereinafter "Germany") and has its main offices in Berlin, Germany.

7.     Defendant, JPMORGAN CHASE & CO., ("JPMorgan), is a multi-national financial and banking services company, headquartered in Manhattan, New York, and also has principal offices in Columbus, Ohio, and has offices, banks and branches all over the United States, including, but not limited to, the ~~Chase Tower, 10 South Dearborn Street, Chicago, Illinois~~ *WASHINGTON IX*, in this judicial district, and does continuous and systematic business in ~~Chicago and Illinois~~ *WASHINGTON DC*.

2

## JURISDICTION

8.     The Court has jurisdiction over the defendant BUNDESREPUBLIK DEUTSCHLAND ("Germany") pursuant to 28 U.S.C. §1330, §1391, §1602-1611 and 28 U.S.C. §1605 et seq., providing for "commercial activity" exceptions to the Foreign Sovereign Immunities Act ("FSIA"), in so far as the action relates to German gold bearer bonds, i.e. commercial negotiable bearer instruments, which Germany issued and sold internationally, all over the world and the United States, and for which Germany is unconditionally liable.   The US Dollar denominated German gold bearer bonds were sold and marketed in the United States, by Germany, through JPMorgan & Co., as Broker, Selling Agent, Redemption and Paying Agent, and the Underwriter.

9.     Germany has an unconditional legal duty to pay his outstanding Debts and Germany promised the unconditional payment to the bondholders.   The German bearer bonds are international loans that must be paid by Germany and the payment of the principal and interest and money is payable to the "bearer" of the bonds in Manhattan, New York, at the offices of the Underwriter and Redemption and Paying Agent, to wit:   JPMorgan & Co. in Manhattan, New York, New York, United States .   JPMorgan Chase & Co. is the successor to JPMorgan & Co. and has the same obligations as the underwriter, redemption and paying agent for the bonds.

10.     The Court has jurisdiction over the defendant, JPMORGAN CHASE & CO., through diversity of citizenship, pursuant to 28 U.S.C. §1332, and because JPMorgan Chase is a national and international bank, and JPMorgan Chase: (i) maintains agents, representatives, personnel, offices, branches, and has assets within this judicial district; and/or JPMorgan Chase (ii) conduct or conducted regular, and continuous, and systematic business within this judicial district, directly or indirectly, and the claims and amount in controversy exceeds the jurisdictional minimum of $75,000USD, exclusive of interests and costs, and venue is proper.

## FACTUAL ALLEGATIONS AS TO GERMANY AND THE BONDS

11.     Mr. Hassan Abbas ("Plaintiff") is the legal and/or equitable owner of the German gold bearer  Bonds – the German International Loan 5.5%, 1930, a/k/a "Young bonds" that were issued internationally, and the bonds were also marketed and sold in the United States by Germany, with JPMorgan & Co. as the Broker and Seller and Underwriter and Redemption and Paying Agent on the Young bonds.

12.     As to the Young bonds – Germany is the direct and unconditional Obligor.

13.     Germany is the Debtor relative to Mr. Hassan Abbas and his bonds.

14.     Demand has been made for payment of the bearer bonds from Germany and/or from JPMorgan Chase & Co. to no avail and the bonds remain unsatisfied and unpaid.

15.     The bonds have been registered and/or validated, i.e. have been shown to be outside Germany in 1945, and the bonds are authentic and valid.  As of the present, Germany and JPMorgan have not paid according to the express terms of the bonds.

16.     Germany and JPMorgan have failed to respond to Mr. Abbas' legitimate demand for redemption and payment of the bearer bonds.  Germany and JPMorgan have failed to pay the money owed to the Plaintiff, Mr. Hassan Abbas, and others similarly situated.

17.     Plaintiff, Mr. Abbas, brings this lawsuit for full payment of his money, both principal and interest, according to the explicit terms of the bearer bonds, including the gold clause, stipulated in the bonds.

18.     Germany conceded that it is legally identical to the German Reich the original obligor.

19.     Germany conceded that it has no sovereign immunity as to the Young bonds because the commercial activity exception to the FSIA applies.

20.     Germany has conceded it has the same obligations as the German Reich.

4

21.    Germany has the same direct and unconditional obligations as the Obligor and Debtor.

22.    Germany unconditionally promised payment to the bearer of the bonds in Manhattan,

New York, the United States, at the office of JPMorgan & Co. Germany unconditionally

guaranteed payment of the Plaintiff's bonds in the United States and the unconditional promise is

contained in the language of the bonds i.e., Germany promised payment for eternity and all time.

23.    There is no statute of limitations for the enforcement of Germany's sovereign debt.

Germany's unconditional promise to pay the bonds and outstanding debts to perpetuity tolls any

statute of limitations. Under the "eternity" and "entrenchment" clause in the Young bonds,

Germany is the "direct and unconditional Obligor" and under the applicable international law

there is no statute of limitations for enforcement of Germany's sovereign debt.

## THE INTERNATIONAL ESTABLISHMENT OF THE "YOUNG" BOND PLAN

24.    The bonds were issued by Germany internationally in 1930, and JPMorgan as underwriter

and paying agent, pursuant to an international agreement between nations which established the

Bank for International Settlements[1] ("BIS") as the Trustee for the Young bondholders.

25.    Germany knows it has no authority to ignore international law which applies herein, and

---

[1] The BIS is an international organization of central banks that is headquartered in Basel, Suisse (Switzerland) created by treaty to foster international monetary and financial cooperation and serve as a bank for central banks. It is currently owned by its central bank members and was established by an international governmental agreement signed at the Hague in 1930 (the "1930 Hague Agreement"). In addition to its primary function as a forum to promote discussion and policy analysis among central banks and within the international financial community, the BIS is an "agent or trustee in connection with international financial operations," and serves as a "prime counterparty for central banks in their financial transactions". The BIS also hosts the secretariats of a number of committees and groups that are dedicated to specific aspects of the financial system which formulate bank capital adequacy standards and are charged with identifying and overseeing actions needed to address vulnerabilities affecting the global financial system. The BIS's highest governance body is its Board of Directors, which is presently composed of 19 central bank governors from around the world, including Chairman of the Board of Governors of the United States Federal Reserve, and President of the Federal Reserve Bank of New York.

Germany must respect his obligations under international law which dictates that Germany's sovereign debt must be paid to private individuals and bondholders like Mr. Hassan Abbas.

26.     International law is an integral part of the United States legal system, and a fundamental part of US Law which the US District Courts and the Courts of Appeal have no authority to disregard international law, as mandated by the United States Supreme Court in *The Paquete Habana*, 175 U.S. 677, 700 (1900), and in the Honorable Justice Gray clearly stated that: "International law is part of our law, and must be ascertained and administered by the courts of justice of appropriate jurisdiction as often as questions of right depending upon it are duly presented for their determination."

27.     Even Germany recognizes the primacy of international law, as stated in the Basic Law Charter and German Constitution – at Article 25: [Primacy of international law] – The general rules of international law shall be an integral part of federal law. They shall take precedence over the laws and directly create rights and duties for the inhabitants of the federal territory.

28.     Signed by seven countries including the United Kingdom, France, Belgium, Italy, Japan, Germany, and Switzerland, the 1930 Hague Agreement provided for the creation of the Young Bond Plan, and the BIS, by the signatory states agreeing to enter into the Convention Respecting the Bank for International Settlements of January 20, 1930 with Switzerland. See *Agreement Regarding the Complete and Final Settlement of the Question of Reparations*, art. VI, Jan. 20, 1930, 104 L.N.T.S. 243 (hereinafter, the "1930 Hague Agreement").

29.     JPMorgan & Co., a U.S. private bank, gave capital for the initial establishment of the Bank for International Settlements ("BIS"), and JPMorgan and another U.S. bank had shares in the BIS, while other members, or shareholders and constituents of the BIS were nation states.

30.     Under the Dawes Plan of 1924, Germany's "World War I" reparations payments, that

were determined by the Treaty of Versailles (1919), were adjusted or rescheduled pursuant to a plan that included issuance of the Dawes Bonds, with JPMorgan & Co., as trustee, underwriter and redemption and paying agent, which were intended to help fund those reparations payments.

31.     The 1930 Hague Agreement, in which the Bank for International Settlements ("BIS") was created, consummated the "Young Plan" and which further adjusted Germany's reparations obligations, and, as relevant, provided for the issuance of additional bonds to fund reparations obligations, i.e. the Young Bonds.   Under the 1930 Hague Agreement, the BIS (a) would act "as agent to the Trustees administering the Dawes Loan," *see* 1930 Hague Agreement, Art. IV, and (b) would "act as trustee for . . . the Young Loan."

32.     As contemplated by the 1930 Hague Agreement and set forth in the General Bond governing the Young Bonds, which is printed on the bonds themselves: "These Presents are entered into between the Government of the German Reich (hereinafter called the German government) of the one part and the Bank for International Settlements as Trustee for the holders of the Bonds for the time being issued and outstanding under the provisions of these presents (hereinafter called "The Bank") of the other part.

33.     The plain terms of the Bearer Bonds that govern the Young Bonds clearly provide that the obligation of payment of the bonds lies with Germany and with JPMorgan as Redemption and Paying Agent.   The purpose of the Young Plan was to provide "for a definitive settlement of the World War I reparations question that had dominated international relations since the signing of the Versailles peace treaty in 1919.   The United States encouraged the sale of the Young bonds by issuing "no objection" letters from the State Department to JPMorgan & Co., and/or to others.

7

## THE TERMS OF THE YOUNG BOND AND GENERAL BOND

34.     Pursuant to the Young General Bond, the German Government explicitly covenanted as follows: ***"The German Government further covenants and declares that nothing in these presents or the Hague Agreement or elsewhere limits, restricts, or varies, or shall be deemed to limit restrict or vary the rights of the holders of the Bearer Bonds which Bonds shall be the direct and unconditional obligation of the German Government."*** See Young General Bond, at Art. VII.

35.     Pursuant to the Young General Bond, the German Government also explicitly covenanted as follows: ***"The German Government hereby covenants to pay the Bondholder the principal and interest secured by the Bonds of the Loan as and when the same shall become due and payable and shall also pay all charges, commissions, expenses, and incidental costs in connection with the service of the loan."*** See Young General Bond, at Art. VII.

36.     Further, the Young General Bond's text specifically states that certain German taxes and revenues from the German Railway as well as Alcohol and Tobacco Taxes and Spirits and Beer Taxes are to be set aside by Germany as collateral guarantee in respect of the payments on both the 1930 and 1924 bonds. See Young General Bond, Pmbl., and at Art. XI.

## FACTUAL ALLEGATIONS AS TO JPMORGAN CHASE & CO.

37.     JPMorgan received certain payments from Germany and/or the Bank for International Settlements ("BIS") for the purpose of servicing the Plaintiff's bonds, which are payable in the United States at the office of JPMorgan in Manhattan, New York, in which country, among others, the Young bonds were issued and sold.  See Young General Bond, Art. VI-IX.

38.     The Young bonds were sold to American citizens, and denominated in United States

Gold Dollars and were payable in "gold coin" of the United States.  The Young bonds represented hundreds of millions of dollars worldwide (and sold in various currencies and countries), and $98,250,000 USD in the United States, and were marketed, sold and/or promoted to U.S. citizens and others, through U.S. selling brokers, redemption and paying agents, trustees, and/or through U.S. banks and/or European financial institutions, and/or banks and/or others, including but not limited to, Defendant herein, JP Morgan, and to over a million investors, bondholders, and/or class members herein, and/or their predecessors, or successors, or representatives etc.

39.    It is not required to allege that Mr. Hassan Abbas purchased the bonds at the time of Issuance, nor to allege the Provenance of the bonds as that is irrelevant and immaterial as the Young bonds are bearer bonds.  A bearer bond is a "bond payable to the person holding it. The transfer of possession transfers the bond's ownership." BLACK'S LAW DICTIONARY at 190 (8* Ed. 2004); *see also,* UNIFORM COMMERCIAL CODE at p. 480 (5' Ed. 2000, White & Summers, Editors) (§13-6, Liabilities of Parties to a Negotiable Instrument) (a bearer instrument "becomes payable to bearer and may be negotiated by transfer of possession alone").  Plaintiff, as the bona fide holder of the bonds is entitled to payment according to the terms of the bearer bonds from the bonds' issuer Germany and the redemption and paying agent, JPMorgan, and from the obligor and guarantor.

40.    JPMorgan is aware these are international loans thus governed by international law.

41.    JPMorgan Chase & Co. is currently holding property and money belonging to Plaintiff, Mr. Hassan Abbas, and it is identifiable property, and identifiable money, and identifiable principal and interest in an identifiable account at JPMorgan, i.e. the principal and/or interest owing to the Plaintiff, Mr. Hassan Abbas, under the Young bonds.  JPMorgan Chase & Co. has converted the funds and is illegally withholding Plaintiff's money.

42.     JPMorgan received funds from the issuer Germany for payment of Plaintiff,

Hassan Abbas, and other bondholders, i.e. principal and/or interest, and, JPMorgan received cash

money owing to Mr. Abbas, and others similarly situated.  JPMorgan is unlawfully holding and

possesses the money and principal and interest designated by Germany for payment of Mr.

Hassan Abbas' bonds.

43.     JPMorgan which underwrote the Young bond issue, in effect conned the public into

buying millions of dollars' worth of German bonds with scant or no regard for the buyers.

Senator Owen Young who played a part in devising the bond plan was an agent of JPMorgan.

The Young Bonds, German Government International 5 ½ % Loan 1930 was sold by JPMorgan,

the same banking house that sold the Dawes bonds, despite the risks involved, and JPMorgan

failed to warn the American investors and others about the risks when JPMorgan was aware of

the risks, and JPMorgan wanted to and did benefit at the expense of Plaintiff and bondholders.

44.     As such, Plaintiff, Mr. Hassan Abbas and Class Members, as the legal and equitable

owners of the German gold bearer bonds at issue herein, and/or everyone in possession of the

German gold bearer bonds, qualifies as a bona fide holder or purchaser, in good faith, for value

without notice of any adverse claim, and Plaintiff and the bondholders herein are entitled to

payment of their principal and interest as per the terms of the bonds at JPMorgan.

## THE VARIOUS TREATIES AND THE U.S. CONSTITUTION

45.     The Young bonds were issued internationally and the State Department encouraged and

permitted and/or did not object to JPMorgan's being the underwriter on the international loans to

Germany, and the loans and bonds are governed by international law and the treaties are also

governed by international law pursuant to the Vienna Convention on the Law of Treaties 1969.

46.     Germany has conceded that the she completed his payment obligations under the London

Debt Accord ("LDA") a/k/a *The Agreement on German External Debts*, 4 U.S.T. 443 (1953), to those who had accepted settlement offers, on October 3, 2010.

47.     Germany and JPMorgan have conceded that those bondholders who had *not* accepted the LDA settlement offers had to "*wait in line*" until after those who had accepted the LDA settlement offers had been provided priority payment.

48.     The Plaintiff, Hassan Abbas, had no choice, and was not to blame for any delay, and was prevented by treaty and/or the German Validation Law 1952 from asserting his legitimate compensation claims, and was prevented from obtaining relief, until ***after*** October 3, 2010.

49.     The German Validation Law 1952, Article 52, ("German Law") prevented Abbas's compensation claims until after those bondholders who had exchanged their bonds, and validated, and settled under the LDA had been paid off first, which according to Germany occurred on October 3, 2010.

50.     Plaintiff's bonds have been previously registered with Germany and validated, i.e. shown to be outside Germany in 1945 - and yet Germany has illegally refused to pay the bonds. Alternatively, there is no "validation" requirement on Hassan Abbas, or his bearer bonds.  There is no "validation" condition ***stated*** in the explicit terms of Hassan Abbas' bonds.

51.     *The Agreement Between the United States of America and the Federal Republic of Germany Regarding Certain Matters Arising from Validation of German Dollar Bonds,* U.S.-F.R.G., Apr. 1, 1953, 4 U.S.T. 885, T.I.A.S. 2794  ("1953" Treaty) is - **Not** a "Self-Executing" treaty – and – the validation treaty requirement is invalid and unenforceable domestically.

52.     The 1953 Treaty also requires a "Validation Board" to be established in the United States, but the Validation Board does not exist in the United States – and has been intentionally shut down by Germany in violation of the 1953 Treaty, 4 UST 885, rendering the treaty null and void.

53.     The 1953 Treaty, 4 U.S.T. 885, has been materially breached providing grounds for its termination as there is no validation board and no competent authorities and no competent examining agencies for the purpose of validation.

54.     The 1953 Treaty is invalid under the Vienna Convention on the Law of Treaties 1969 as there has been fundamental change of circumstances, error, fraud in the inducement, tacit abrogation, and the treaty is non-self-executing and obsolete.

55.     The 1953 Treaty is Unconstitutional as it incorporates by reference a German law which violates the Bill of Rights.  The treaty and German law violates the 7th Amendment's Right to Jury, and violates the 5th Amendment's Right to Due Process of Law and effects Unconstitutional Takings without compensation and violates people's Sovereignty under the 10th Amendment.

56.     Because the bonds' actual terms state they are unconditionally payable to the bearer of the bonds in Manhattan, New York, no condition may be imposed by Germany or JPMorgan or BIS whatsoever on the bonds or upon Hassan Abbas, or other bondholders.

57.     Germany and JPMorgan and the BIS must respect the treaties and US Constitution and the terms of the bearer bonds and their legal obligations for payment of the bonds.

58.     Germany may not impose any conditions on Hassan Abbas that are outside the terms of the bonds – and the bearer bonds are payable at JPMorgan in New York in the United States.

59.     The bonds are the direct and unconditional obligation of the obligor – and whatever *ex post facto* "validation law in Germany" after the issuance of the bonds may exist in Germany is totally irrelevant because the German law is not applicable and not enforceable in the United States.  German law is not the law of the land.  The U.S. Constitution and the decisions of the Supreme Court are the paramount law of the land and the decisions of the Supreme Court supersede the decisions of the lower courts.

60.     Germany and JPMorgan individually, severally and jointly, have violated the negotiable instruments law, and have violated the Uniform Commercial Code in various provisions, and have breached the Uniform Commercial Code ("UCC"), and applicable in the U.S., including Illinois, and New York.   Germany and JPMorgan violated the UCC and negotiable instruments law as to bearer bonds in important respects.   As to bearer bonds, it is irrelevant when bonds were originally purchased by Plaintiff.   No such allegation is required.

61.     There is no forum selection clause in the bonds in favor of Germany, and so Abbas cannot be compelled against his will to litigate in German courts or enter a German Validation scheme. As to bearer bonds, possession is the proof and possession is the law.   Nothing further is required. The bonds do not require proof of provenance and Germany or JPMorgan or BIS cannot require any such allegation as to the provenance, or location of the bonds in 1945, or time of original purchase, or when the bonds were purchased by Plaintiff, as that is not relevant under the law and Uniform Commercial Code as to bearer bonds payable unconditionally to the bearer.   Germany cannot demand proof of the location of the bonds in 1945, and no such allegation is necessary as to Plaintiff or any bondholder because these are unconditional bearer bonds.

## COUNT I

## DEFAULT ON PAYMENT OF THE BONDS AGAINST DEBTOR GERMANY

62.     Plaintiff repeats the previous paragraphs as if fully set forth herein.

63.     Germany conceded it is legally identical to the German Reich.   Germany conceded it has no sovereign immunity and the commercial activity exception applies as to the Young bonds.

64.     Germany is unconditionally liable, and Germany has unconditionally promised payment to the "bearer" of the bond at the office of JPMorgan in Manhattan, New York, in gold coin of the United States of America of the standard of weight and fineness existing on June 1, 1930.

65.     Plaintiff, Hassan Abbas, is entitled to payment by debtor Germany of his principal and interest.  Plaintiff is entitled to redeem his bonds at the offices of the redemption and paying agent in the United States at JPMorgan in Manhattan, New York, and according to the explicit terms of the contracts.  The underwriter JP Morgan negotiated the terms of the bonds and Paying agent agreement with the issuer Germany.   The bonds were not the product of face-to-face negotiations between the bondholders and the issuing German state.  The bondholders are the direct and intended beneficiaries of the Young bonds and trustee agreement with BIS. Germany's agreement with JPMorgan as underwriter, redemption and paying agent in Manhattan, New York, and JPMorgan's sinking fund obligations are for the direct benefit of bondholders.

66.     Germany covenanted, agreed, promised and guaranteed to pay the bonds unconditionally and, agreed, promised and guaranteed, not to limit, restrict or vary the rights of the holders of the bonds in any way.   Germany failed to respect his affirmative and restrictive covenants to unconditionally pay upon demand the Plaintiff's Young bonds.   Plaintiff made demand for payment and Germany has not paid the bonds.  Germany has caused damages to Mr. Abbas.

67.     The Young Bond, 5.5% German International Loan 1930 contains an "Eternity"  and and "Entrenchment" Clause which is clear and unequivocal and states as follows:

*"Nothing in the General Bond or in the Hague Agreement or elsewhere limits, restricts, or varies, or shall be deemed to limit, restrict or vary the rights of the holder of this bond, which Bond is and shall be the direct and unconditional obligation of the Obligor."*

68.   As to the Plaintiff's unconditional bearer bonds, there are no periods of limitations.

This unlimited language of the bonds is provided by agreement of the parties reflected in the instruments themselves and which provides a source of law as to statute of limitations.

69.     There are no time limits as to the bonds which are unconditional.  No time limits as to the claims. Plaintiffs' claims are valid and timely because Germany bargained for bonds that are

14

unconditional.  The bonds are the "Direct and Unconditional Obligation of the Obligor" i.e. Germany.  The payment clauses of the Young bond are unconditional and so aimed at perpetuity and the unconditional intent is stated in the bonds.  <u>Young General Bond - Article VII</u>.

70.     Payment of Plaintiff's bonds are fully and contractually and unconditionally guaranteed to perpetuity and may not be modified, restricted, or varied in any manner.  The bonds are payable in Manhattan, New York, the United States, and also "In New York, a bond is a contract. . . ." *Arch Ins. Co. v. Precision Stone, Inc.*, 584 F.3d 33, 39 n. 4 (2d Cir. 2009).

71.     Plaintiff's bonds present a straightforward contract analysis as to Germany who must make payment according to the terms of the contract.  The Second Circuit Court of Appeals in *NML Capital, Ltd. v. Republic of Argentina*, 12-105(L) (August 26, 2013 – 2nd Cir.), held Argentina liable for his debts and stated that payment of the bonds must be made according to the terms of the contract.  An unconditional promise to pay a debt tolls any statute of limitations. *Buxton v. Diversified Resources Corp.*, 634 F.2d 1313, 1317 (10th Cir. 1980); *Hughes v. Werners Estate*, 78 F.Supp. 762 (1948); *Murphy v. Holway,* 25 Ill.App. 554 (1st Dist. 1888).

72.     The bonds contain a gold clause. The gold clause provides the bond's bearer is entitled to payment in gold coin based upon the gold content of the dollar existing at that time, and the legal content of the dollar at that time was 25.8 grains of gold, nine tenths fine, as was defined by Congress on March 14, 1900. The estimated and present value of the German gold bearer bonds is staggering, and will be calculated, ascertained and presented by economic experts during trial, approximately $2,000,000USD/bond (Two Million US Dollars per bond) and the interest and value also depends on the number of coupons attached with the bonds.

73.     The present value of a single Young bond, a 35 Year 5.5% Sinking Fund Gold Bond, with

an original face value of One Thousand ($1,000.00) US Gold Dollars, is calculated at 25.8 grains of gold for each dollar, for a $1,000 gold bond the quantity of gold is 25,800 grains divided by 480 (53.75 equivalent troy ounces of gold per bond) and brought to present value of gold as of today $1,230 per ounce [25,800 divided by 480 multiplied Price of Gold $1230/ounce = $66,112 face value of a single bond].  The applicable interest is also payable in gold, including but not limited to compound interest for intentional default by Germany.   At the time of issuance of the bonds the price of gold was approximately $20/ounce and has increased to approximately $1230/ounce in October 2014, and given the number of applicable compounding periods, the value of the German gold bonds has increased, and according to the terms of the Young bonds the interest is continuously payable at 5.5% per annum until the principal is fully paid.

74.     The Plaintiff respectfully requests just compensation for his patience and perseverance through adversity and difficulty even when Germany in bad faith refused to pay Mr. Abbas' money and refused to honor the gold clause as each bond is payable in gold coin of the U.S. based on the standard weight and fineness existing on June 1, 1930, as stated in the bonds, and 75 years of compound interest are applicable under the payment clauses of the Young bonds.

75.     As a direct and proximate result of Germany's default on the bonds, breach  of contract, and wrongful conduct and unjust enrichment, the Class Members' and the Plaintiff's property rights and interests, have been adversely affected, and Plaintiff, Mr. Hassan Abbas, and Class Members, have suffered substantial monetary damages and other damages.

76.     As a direct and proximate result of Germany's wrongful conduct, the Plaintiff is entitled to restitution, and institution of a constructive trust, disgorging all profits, benefits, and compensation illegally obtained by Germany as a result of default and breach of obligations.

77.     WHISEFORE, Plaintiff Hassan Abbas, demands a jury trial, damages and judgment

16

against Germany for: (i) compensatory damages which meet and exceed the $75,000USD jurisdictional requirements of this court, exclusive of interest, fees or costs, and which the Plaintiff shall leave to the determination of the jury and/or ultimate trier of fact, (ii) Plaintiff requests damages in the amount of $2,000,000 per bond based on the gold clause and the many years of compound interest applicable; (ii) restitution from and institution of a constructive trust, disgorging all profits, benefits, and other compensation unlawfully obtained by Germany, and attorney's fees, interest, exemplary damages for bad faith and intentional default, and costs, and as the Court may deem just and proper.

## COUNT II

## <u>BREACH OF CONTRACT BY GERMANY</u>

78.     Plaintiff repeats the previous paragraphs as if fully set forth herein.

79.     The Young bond contract exists and is valid and on the front side of the bond states:

**a.**     "The German Reich (hereinafter termed obligor), for value received hereby **promises to pay** on the first day of June 1965, **to the bearer of this bond**, the **principal sum** of "ONE THOUSAND DOLLARS" and to **pay semi-annually** on the first day of June and the first day of December in each year, **until such principal shall have been paid, interest thereon at the rate of Five and one-half percent per annum**….";

**b.**     "Such principal sum and such interest shall be paid in the city of New York, State of New York, United States of America at the office of J.P. Morgan & Co., in the Borough of Manhattan in said city of New York, **in gold coin of the United States of America, of the standard weight and fineness existing on June 1, 1930**, without deduction for all present or future German taxes, stamp, other duties, dues or public charges, of any kind whatsoever.

**c.**     "The Obligor further covenants that in no case or event will this bond or the coupons for interest be attached or sequestered, and that all and any moneys in this Bond covenanted to be paid upon or in respect of this Bond will be paid in time of war as well as in time of peace and war or not the holder of the bonds or any interest coupons is a subject of a State friendly or hostile to the German Reich…"

**d.**     "This Bond is one of the Five and One-half percent Gold Bonds (termed collectively the "Bonds of this issue") of the Obligor, for the aggregate principal amount of $98,250,000 payable in the above defined gold coin of the United States of America, issued therein; which bonds

constitute part of the German Government International 5 ½% Loan 1930 (hereinafter referred to as the "Loan") described in the General Bond (of which a transcript in full is printed on the reverse) dated June 10, 1930, executed by the Obligor with the Bank For International Settlements as Trustee thereunder.

e.   **"Nothing in the General Bond or in the Hague Agreement or elsewhere limits, restricts, or varies, or shall be deemed to limit, restrict or vary the rights of the holder of this bond, which Bond is and shall be the direct and unconditional obligation of the Obligor."**

80.     Germany has intentionally breached the unconditional contract and has failed to honor his unconditional payment obligations under the terms of the guaranteed and secured Young bonds.

81.     The bond contract has been performed by Plaintiff and the bondholders who invested in the bonds and who provided Germany with funds and valuable consideration.

82.     Germany's breach has caused damages to Plaintiff Hassan Abbas, who did not receive his principal or interest unconditionally, and Mr. Abbas did not receive payment whatsoever, not in gold coin of the United States, not in cash and not in any currency, and not by wire transfer and Mr. Abbas did not receive any of his property, nor his funds, nor or any of his principal and interest.  Germany failed to make direct and unconditional payment to Plaintiff and breached the terms of the contract and Mr. Abbas is entitled to damages and compensation.

83.     As a direct and proximate result of Germany's wrongful conduct, Plaintiff is entitled to restitution from, and institution of a constructive trust, disgorging all the profits, benefits, and compensation illegally obtained by Germany as a result of default and Germany's breach.

          WHISEFORE, Plaintiff Hassan Abbas, demands a jury trial, damages and judgment against Germany for: (i) compensatory damages which meet and exceed the $75,000USD jurisdictional requirements of this court, exclusive of interest, fees or costs, and which the Plaintiff shall leave to the determination of the jury and/or ultimate trier of fact, (ii) Plaintiff requests damages in the amount of $2,000,000 per bond based on the gold clause and the many years of compound interest applicable; (ii) restitution from and institution of a constructive trust,

disgorging all profits, benefits, and other compensation unlawfully obtained by Germany, and attorney's fees, interest, exemplary damages for bad faith and intentional default, and costs, and as the Court may deem just and proper.

## COUNT III

## VIOLATION OF INTERNATIONAL LAW AGAINST GERMANY

84.    Plaintiff repeats the previous paragraphs as though fully set forth herein.

85.    Germany violated international law because under which Germany must pay Abbas's bonds and Germany must honor and pay his sovereign debts to the private bondholders.

86.    Under international law there is no statute of limitations for enforcement of sovereign debt as confirmed by the 7th Circuit Court of Appeals in *Korber v. Bundesrepublik Deutschland*.

87.    The German Constitutional Court held a sovereign nation must pay his debts *vis-a-vis* private individuals, and a failure to do so is a breach of international law, as follows:

> *"currently no rule of general international law can be ascertained entitling a State, vis-à-vis private individuals, to suspend the performance of due obligations for payment arising under private law by invoking necessity based on an inability to pay"*. Bundesverfassungsgericht [BVerfG], May 27, 2008 at www.bverfg.de/entscheidungen/ms20070508_2bvm000103.html.

88.    As a direct and proximate result of Germany's wrongful conduct, and violations of international law, and intentional default Plaintiff is entitled to restitution from, and institution of a constructive trust, disgorging all the profits, benefits, and compensation illegally obtained by Germany as a result of default and violations of international law and breach of obligations.

89.    WHEREFORE, Plaintiff Hassan Abbas, demands a jury trial, damages and judgment against Germany for: (i) compensatory damages which meet and exceed the $75,000USD jurisdictional requirements of this court, exclusive of interest, fees or costs, and which the Plaintiff shall leave to the determination of the jury and/or ultimate trier of fact, (ii) Plaintiff

requests damages in the amount of $2,000,000 per bond based on the gold clause and the many

years of compound interest applicable; (ii) restitution from and institution of a constructive trust,

disgorging all profits, benefits, and other compensation unlawfully obtained by Germany, and

attorney's fees, interest, exemplary damages for bad faith and intentional default, and costs, and

as the Court may deem just and proper.

**COUNT IV**

**<u>UNJUST ENRICHMENT AGAINST GERMANY</u>**

90.     Plaintiff repeats the previous paragraphs as though fully set forth herein.

91.     By the aforesaid acts, inactions, negligent, fraudulent, wrongful, unlawful, and/or other

improper acts, Germany has been and/or are being unjustly enriched by seizure, expropriation,

taking, retention, and improperly withholding the principal, and interest and withholding

Plaintiffs money, and failing to pay the bonds of Plaintiffs and Class Members.

92.     Germany has been unjustly enriched from revenues, profits, and/or other benefits

received and for which it would be unjust for Germany to retain, including but not limited to: (a)

the retention of Plaintiff's monies and property; (b) preferred interest rates and/or ratings for

securities sold in the United States, and which revenues, profits and/or benefits are directly

related to or the result of Germany's increased market capitalization and assets predicated upon

Germany's failure to redeem the Plaintiffs' bonds and failure to pay the cash amounts due and;

(c) failure of Germany to pay the amounts owing of interest and principal on the bonds.

93. Germany has been unjustly enriched by Germany's failure to redeem the bonds

and failure to provide the cash payments to the Plaintiff for the bonds and for their property.

94. Germany received monies and made huge profits as a result of Plaintiffs'

investments and purchases of the bonds, and Germany wrongfully accepted and retained these monies and benefits and profits to the detriment of Plaintiff, Hassan Abbas, and Class Members. Germany's enrichment at the expense of Plaintiff and Class Members was unjust.

95. As a direct and proximate result of Germany's wrongful conduct and aforesaid unjust enrichment, Class Members' and Plaintiff's property rights and interests, have been adversely affected, and Plaintiff and Class Members and have suffered monetary and other damages.

96.    As a direct and proximate result of Germany's wrongful conduct, Plaintiffs are entitled to  restitution from, and institution of a constructive trust, disgorging all the profits, benefits, and other compensation illegally obtained by Germany as a result of the default and breach of obligations.

97.    WHISEFORE, Plaintiff Hassan Abbas, demands a jury trial, damages and judgment against Germany for: (i) compensatory damages which meet and exceed the $75,000USD jurisdictional requirements of this court, exclusive of interest, fees or costs, and which the Plaintiff shall leave to the determination of the jury and/or ultimate trier of fact, (ii) Plaintiff requests damages in the amount of $2,000,000 per bond based on the gold clause and the many years of compound interest applicable; (ii) restitution from and institution of a constructive trust, disgorging all profits, benefits, and other compensation unlawfully obtained by Germany, and attorney's fees, interest, exemplary damages for bad faith and intentional default, and costs, and as the Court may deem just and proper.

## COUNT V

### GERMANY'S BREACH OF OBLIGATION TO ENTER DIRECT NEGOTIATIONS UNDER ARTICLE 20 OF THE LONDON DEBT ACCORD

98.    As stated in Article 20 of the *Agreement on German External Debt 1953*, 4 U.S.T.

21

443, a/k/a London Debt Accord – "LDA" – Agreement between Germany on the one hand and twenty one nations including the United States on the other hand, which states that Germany must enter direct negotiations with respect to the debts of the German Reich and such payments are not prohibited under the agreement. **Article 20 - Reich debts owing under multilateral agreements**: "Payments in respect of debts of the Reich or of an agency of the Reich arising out of unpaid contributions or services rendered under the terms of multilateral international agreements or of the statutes of an international organization are not prohibited by the terms of the present Agreement. The Government of the Federal Republic of Germany will, at the request of the interested creditors, enter into direct negotiations with regard to these debts."

99. The German government is obliged to enter direct negotiations with the Plaintiff,

Mr. Hassan Abbas, under the LDA, Article 20, as he is an interested creditor as to payment in respect of Germany's Reich debts.

100.    Mr. Hassan Abbas requests for direct negotiations.    Germany's refusal to enter negotiations with Mr. Hassan Abbas is a breach of Germany's treaty obligation for direct negotiations and has caused Plaintiff's damages.

101.    WHISEFORE, Plaintiff Hassan Abbas, demands a jury trial, damages and judgment against Germany for: (i) compensatory damages which meet and exceed the $75,000USD jurisdictional requirements of this court, exclusive of interest, fees or costs, and which the Plaintiff shall leave to the determination of the jury and/or ultimate trier of fact, (ii) Plaintiff requests damages in the amount of $2,000,000 per bond based on the gold clause and the many years of compound interest applicable; (ii) restitution from and institution of a constructive trust, disgorging all profits, benefits, and other compensation unlawfully obtained by Germany, and

attorney's fees, interest, exemplary damages for bad faith and intentional default, and costs, and as the Court may deem just and proper.

**COUNT VI**

**BREACH OF GERMANY'S PAYMENT OBLIGATIONS UNDER
ARTICLES 3, 4 AND 6 OF THE LONDON DEBT ACCORD ("LDA")**

102.        Under Article 4 of the London Debt Accord, Germany agreed to settle and pay the "*pecuniary obligations arising out of loan or credit contracts entered into before 8th May, 1945.*" The pecuniary obligations which Germany agreed to settle and pay include the Young bonds herein. See **Article 4** ("**Debts to be Settled**") of The Agreement on German External Debts 1953, 4 U.S.T. 443, a/k/a London Debt Accord. Germany agreed to eliminate the state of default on the bonds. See Agreement on German External Debt 1953, 4 UST 443, a/k/a LDA. See **Preamble and Framework**, where Germany agrees to "eliminate the state of default" on the bonds.

103.        Also as stated in Annex I of the London Debt Accord – *Agreed Recommendations For The Settlement of Reich Debts* (LDA – p. 22 & 23 of 106): "The Government of the Federal Republic of Germany (hereafter referred to as the Federal Government) will undertake to offer to the Bondholders to pay and transfer various amounts". Annex I - relative to Reich Debts - (1) The 7 percent External (Dawes) Loan 1924 and (2) The 51/2 percent International (Young) Loan 1930. Section (e) further stated: (e) In all respects other than those indicated above, the terms of the original Loan contracts shall be maintained.

104.        Article 6 of the LDA treaty states as follows: **Payment and transfer under the Agreement.** The Federal Republic of Germany will:

(a)        make payments and transfers, in accordance with the provisions of the present Agreement and of the Annexes thereto, on the debts for which it is liable thereunder;

23

(b)     permit the settlement and payment, in accordance with the provisions of the present Agreement and the Annexes thereto, of debts for which any person other than the Federal Republic of Germany is liable, and make provision for the transfer of payments on such debts as are settled, under the provisions of this Agreement and the Annexes thereto.

Under part (a) Germany must make payments of the Dawes and Young bonds for which it is directly liable. Under part (b) Germany must make provisions for transfer of payments and permit settlement of the debts for which Germany assumed liability for and for which Germany guaranteed payment such as the Agricultural Bonds (See 1938 Guaranty) and Rheienelbe Union bonds and other bonds on the list that Germany agreed to settle and end the status of default.

## COUNT VII

## CONVERSION BY GERMANY

105.    Plaintiff Hassan Abbas is the owner of the money and cash funds i.e. principal and interest, relative to the bonds.  Plaintiff has an unconditional and absolute and immediate right to possession of his money and principal and interest and cash payments. Plaintiff has the right to immediate payment of and possession of his property, money, principal and interest, which is being unlawfully withheld and retained by Germany.  Plaintiff has made demand for the property, principal and interest, money and cash at issue and Germany has wrongfully assumed control, dominion or ownership over the property, principal and interest, money and cash at issue, without authorization.  Germany has deprived Plaintiff Hassan Abbas of the possession and/or use of his property, principal and interest, money and cash.  The subject of the conversion, the property, principal and interest, money and cash at issue is identifiable and it is tangible property and/or represents or is represented by something tangible. See *Song v. PIL, LLC*, 640 F. Supp. 2d 1011, 1017 (N.D. Illinois 2009); *FMC Corp. v. Capital Cities/ABC Inc.*, 915 F. 2d 300, 304 (7th Cir. 1990).

106.    Germany intentionally defaulted on the bonds and Germany exceeded his authority by

keeping and using the Plaintiff's money for other purposes than to repay the owing principal and interest, and Germany has wrongfully assumed control of Plaintiff's money and property for an indefinite period of time.

107.    Plaintiff has a right of possession of his principal and interest and money and cash funds. Germany wrongfully deprived the Plaintiff, Mr. Hassan Abbas, of the principal and interest and money and cash funds and property which belongs to Plaintiff and which property and money is identifiable and/or in a specific bank or financial account or sinking fund designated by Germany.

108.    Germany has wrongfully deprived the Plaintiff, Mr. Hassan Abbas of his vested rights and his property rights under the bonds. Germany has deprived Plaintiff of the benefits of, i.e. principal and interest, and money, owing to his as bondholder.

109.    Germany exercised unlawful dominion over personal property in denial of or inconsistent [23Misc.2d 343] with his rights therein' (*Meyer v. Price*, 250 N.Y. 370, 381, 165 N.E. 814, 819). Because Germany has exercised wrongful dominion over Plaintiff's property, it is immaterial that if Germany acted in good faith, for a "wrongful intent is not an essential element of the conversion" (*Boyce v. Brockway*, 31 N.Y. 490, 493; *Pease v. Smith*, 61 N.Y. 477, 480).

110.    Germany's taking of property, money, principal and interest, without right constitutes a conversion and no demand and refusal are necessary to render the defendant liable (*Pierpoint v. Hoyt*, 260 N.Y. 26, 29, 182 N.E. 235, 236, 83 A.L.R. 1495; *Mullen v. J. J. Quinlan & Co.*, 195 N.Y. 109, 115, 87 N.E. 1078, 1080, 24 L.R.A.,N.S., 511). The conversion also consists of Germany's wrongful retention or detention of Plaintiffs' property and money and principal and interest, as distinguished from wrongful taking (*Pierpoint v. Hoyt, supra*). No formal demand for return is necessary from Germany having possession, and in intentional default of her obligations for payment of the principal and interest and/or knows the true facts and has been informed of the

25

true facts (*Employers' Fire Insurance Co. v. Cotten*, 245 N.Y. 102, 105, 156 N.E. 629, 630, 51
A.L.R. 1462).

111.    As a direct and proximate result of Germany's unlawful acts of conversion of Plaintiff's
property, i.e. Mr. Hassan Abbas' property, cash funds, money, and principal and interest; and
Germany's conversion of the Class Members' funds – both the class and the Plaintiff Hassan
Abbas have suffered substantial and ongoing monetary damages.

**COUNT VIII**

**<u>CONVERSION AGAINST JPMORGAN</u>**

112.    PLAINTIFF incorporates each and every one of the allegations of the foregoing
paragraphs, as if the same were set forth fully and at length herein.

113.    The elements of conversion are clearly met and pleaded herein by the Plaintiff, Mr.
Hassan Abbas: (a) Plaintiff has a right to the property, and principal and interest, and money and
cash at issue; (b) Plaintiff has an absolute and unconditional right to immediate possession of the
property, principal and interest, money and/or cash at issue; (c) Plaintiff has made demand for the
property, principal and interest, money and cash at issue; (d) the defendant JPMorgan has
wrongfully assumed, control, dominion or ownership over the property, principal and interest,
money and cash at issue, without authorization, (e) JPMorgan deprived Plaintiff Hassan Abbas of
the possession and/or use of his property, principal and interest, money and cash; (f)  the subject
of the conversion, the property, principal and interest, money and cash at issue is identifiable and
it  is tangible property and/or represented by something tangible. See *Song v. PIL, LLC*, 640 F.
Supp. 2d 1011, 1017 (N.D. Illinois 2009); *FMC Corp. v. Capital Cities/ABC Inc.*, 915 F. 2d 300,
304 (7th Cir. 1990)

114.    JPMorgan unlawfully converted and deprived Plaintiff and Class Members out of

26

possession of their property, principal and interest, money and cash owing to Mr. Hassan Abbas and the bondholders. JPMorgan deprived Plaintiff of possession of the money and cash payments for the bonds, and of the principal and interest, held in trust by JPMorgan, who received the money from Germany and established sinking funds and payment agent accounts pursuant to the paying agent agreements. Mr. Hassan Abbas' funds and money and property are identifiable. JPMorgan has an obligation to pay Plaintiff and breached the duty of payment. Money of course is a form of property and is tangible and/or represents or is represented by something tangible.

115.     JP Morgan's conversion of Plaintiff's money and property was wrongful, and in violation of international law and all applicable laws. Mr. Hassan Abbas owns and has the right to immediately possess the personal property, principal and interest, in question and JPMorgan has interfered with Plaintiff's rights. JPMorgan intentionally interfered with the plaintiff's personal property, also described as exercising "dominion and control" over the principal and interest and money and cash. JPMorgan's interference deprived the plaintiff of possession or use of the personal property in question.

116.     JPMorgan's conversion and interference with and deprivation of Plaintiff's property, principal and interest, money and cash, has caused serious damages to the plaintiff, Mr. Hassan Abbas.

117.     JPMorgan intentionally defaulted on his obligations as paying agent on the bonds and JPMorgan exceeded his authority by keeping and using the Plaintiff's money for other purposes than to repay and distribute the owing principal and interest to Plaintiff and the bondholders, and JPMorgan has wrongfully assumed control of Plaintiff's money and property and deprived Plaintiff and principal and interest and cash funds for an indefinite period of time.

118.     JPMorgan's conversion' is a result of the unauthorized assumption and exercise of

Plaintiff's ownership rights in the principal and interest and property and cash funds to the exclusion of the proper owner Mr. Hassan Abbas' rights to his money and principal and interest.

119.    JPMorgan's acts constitute conversion, and inter alia consist of: (1) JPMorgan's taking of Hassan Abbas' property and money i.e. both principal and interest without the owner's authorization; (2) the unauthorized use by JPMorgan of the Plaintiff, Mr. Hassan Abbas' property i.e. principal and interest, and money and cash; JPMorgan has no right or title to the money and principal and interest; (3) the improper retention and seizure of principal and interest and money received from Germany by JPMorgan for payment to Mr. Hassan Abbas and bondholders and which are maintained in the sinking funds or paying agent accounts by JPMorgan (4) alternatively, the commingling of Plaintiff Hassan Abbas' funds with those of JPMorgan, and (5) alternatively, the delivery by JPMorgan of Plaintiff Hassan Abbas' money and property to the wrong person or entity and to a person or entity not entitled to its possession.

120.    In his claim for conversion, Plaintiff Hassan Abbas need not establish that the defendant JPMorgan "*intended*" to possess Hassan Abbas' property and money and principal and interest, although the allegation is made, rather, it is sufficient to show that the defendant JPMorgan improperly deprived plaintiff of his property and money and principal and interest, and JPMorgan has deprived Mr. Hassan Abbas and the bondholders of their property for an indefinite period of period of time.

121.    JPMorgan's conversion is also as a result of the "acts of dominion wrongfully exerted over" Plaintiff's money and principal and interest and personal property "in denial of or inconsistent" with the Plaintiff's rights in his property and rights to his money and property and cash and principal and interest. See e.g., 23 N.Y. Jur. 2d, Conversion § 1 (2001), citing *Meyer v. Price*, 250 N.Y. 370, 165 N.E. 814 (1929).

122.    As a direct and proximate result of JPMorgan's unlawful acts of conversion of Plaintiff's property, i.e. Mr. Hassan Abbas' property, cash funds, money, and principal and interest; and JPMorgan's conversion of the Class Members' funds – both the class and the Plaintiff Hassan Abbas have suffered substantial and ongoing monetary damages.

123.    WHISEFORE, Plaintiff Hassan Abbas, demands a jury trial, damages and judgment against Germany for: (i) compensatory damages which meet and exceed the $75,000USD jurisdictional requirements of this court, exclusive of interest, fees or costs, and which the Plaintiff shall leave to the determination of the jury and/or ultimate trier of fact, (ii) Plaintiff requests damages in the amount of $2,000,000 per bond based on the gold clause and the many years of compound interest applicable; (ii) restitution from and institution of a constructive trust, disgorging all profits, benefits, and other compensation unlawfully obtained by Germany, and attorney's fees, interest, exemplary damages for bad faith and intentional default, and costs, and as the Court may deem just and proper.

## COUNT IX

### UNJUST ENRICHMENT AGAINST JP MORGAN

124.    Plaintiff repeats and alleges each of the previous paragraphs as if fully stated herein.

125.    JPMorgan has unjustly retained the benefits of Mr. Hassan Abbas' money and principal and interest owing to his as the bondholder which JPMorgan received from the investors and bondholders such as Plaintiff;  and/or JPMorgan received the benefits and profits from Germany as the paying agent in the United States on the Young bonds and designated to pay the Plaintiff's principal and interest, and JPMorgan has unjustly converted the cash funds and money and has unjustly retained the benefits.  This unjust retention is to Plaintiff's detriment and at

126.    JPMorgan has unjustly retained the profits and benefits and money provided by Germany

for payment Plaintiff, i.e. the principal and interest on the bonds. This retention by JPMorgan violates fundamental principles of justice, equity and good conscience. JPMorgan has unjustly retained the benefit to the plaintiff's detriment, and JPMorgan's retention of the benefit violates the fundamental principles of justice, equity, and good conscience. Equity and good conscience requires restitution.

127.    These allegations herein are sufficient allegations.  A "quasi contract" applies in the absence of an express direct agreement between the bondholders or Plaintiff, Mr. Hassan Abbas and JPMorgan.  The bond is an agreement between Germany and the bearer of the bond with JPMorgan as the underwriter and paying agent whose duty to pay is for the benefit of the bondholders.  The underwriting agreement and paying agent agreement between Germany and JPMorgan is for the direct and intended beneficiaries the bondholders including Mr. Hassan Abbas.  A quasi-contract is not really a contract at all, but rather a legal obligation imposed on JPMorgan in order to prevent a party's unjust enrichment who received the Plaintiff's money and is refusing to pay it back and JPMorgan is holding Plaintiffs' money illegally. See *Parsa v. State of New York*, 64 N.Y.2d 143, 148 (1984); *Farash v. Sykes Datatronics*, 59 N.Y.2d 500, 504; *Bradkin v. Leverton*, 26 N.Y.2d 192, 197 (1970); *Miller v. Schloss*, 218 N.Y. 400, 407. A quasi-contractual obligation is one imposed by law, where there has been no contractual agreement directly between the parties. The law creates it, regardless of the intention of the parties, to assure a just and equitable result. *Clark-Fitzpatrick v. Long Island R.R. Co.*, 70 N.Y.2d 382, 389 (1987).  Plaintiffs do not need to allege they performed a service for JPMorgan as this is not a quantum meruit claim.

135.    A quasi-contract exists independent of any agreement or consent of the parties. *Steinberg v. Chicago Medical School*, 69 Ill. 2d 320, 334 (1977) ("The right to recover on a [quasi-

contract], although phrased in contract terminology, is not based on an agreement between parties but is an obligation created by law"). In fact, the intention of the parties is entirely disregarded. A quasi-contract, therefore, is "no contract at all," but a "rule of law that requires restitution to the plaintiff of something that came into defendant's hands but in justice belongs to the plaintiff." D. Dobbs, Dobbs Law of Remedies §4.2(3), at 580 (2d ed. 1993). Plaintiff's action is based on the principle that JPMorgan ought not to enrich itself unjustly at the expense of Mr. Hassan Abbas. Liability is based on the principle of unjust enrichment and the "contract" and obligation to pay and restitution is the remedy. Unjust enrichment is a quasi-contract theory of recovery, and "is an obligation imposed by equity to prevent injustice, in the absence of an actual agreement between the parties concerned," *IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 12 N.Y.3d 132, 142 (2009).

136.    Plaintiff, Mr. Hassan Abbas has shown that JPMorgan was enriched by failing to pay the principal and interest and by unlawfully retaining plaintiff's money, at plaintiff's expense and to plaintiff's detriment, and that it is against equity and good conscience to permit JPMorgan to retain what is sought to be recovered, i.e. the principal and interest owed on the bonds and cash monies belonging to Plaintiff, Mr. Hassan Abbas.

137.    WHISEFORE, Plaintiff Hassan Abbas, demands a jury trial, damages and judgment against Germany for: (i) compensatory damages which meet and exceed the $75,000USD jurisdictional requirements of this court, exclusive of interest, fees or costs, and which the Plaintiff shall leave to the determination of the jury and/or ultimate trier of fact, (ii) Plaintiff requests damages in the amount of $2,000,000 per bond based on the gold clause and the compound interest applicable; (ii) restitution from and institution of a constructive trust, disgorging all profits, benefits, and other compensation unlawfully obtained by JPMorgan, and

31

attorney's fees, interest, exemplary damages for bad faith and intentional default, and costs, and as the Court may deem just and proper.

**COUNT X**

**BREACH OF DUTIES AS PAYING AGENT BY JPMORGAN**

137.    JPMorgan was in a position of trust towards the bondholders in selling the bonds and in establishing the Sinking Funds and JPMorgan was in a position of trust in holding the principal and interest for distribution and payment to the bondholders. JPMorgan held and holds Plaintiff's money in trust and JPMorgan breached the trust and breached the fiduciary and legal duties as paying agent.  JPMorgan failed to pay Plaintiff's money, i.e. Mr. Abbas' principal and interest.

138.    JPMorgan's duties are based on its fiduciary and legal obligations pursuant to the underwriting and/or paying agent agreement with Germany and one of the paying agents' elementary duties is to provide information to bondholders seeking redemption and to provide payment procedures and payment of the interest and principal and is derived from JPMorgan's duty to manage the sinking funds and/or trust assets and/or money it has received from Germany for payment of the bonds, and to hold and/or disburse the bonds' principal and interest for the benefit of the bondholders, who are the owners of bonds and owners of the principal and interest.

139.    JPMorgan breached the statutory duties as set forth in Sec. 317 (b) of Trust Indenture Act 1939: (b) Each paying agent shall hold in trust for the benefit of the indenture security holders or the indenture trustee all sums held by such paying agent for the payment of the principal of or interest on the indenture securities, and shall give to such trustee notice of any default by any obligor upon the indenture securities in the making of any such payment.

140.    Section 316(b) the Trust Indenture Act 1939 states in relevant part Bondholders'

32

"right to receive payment of principal and interest....or to institute suit for enforcement of such payment....shall not be impaired...".   Hassan Abbas is entitled to payment of the money owed to his. JPMorgan must pay Plaintiff's principal and interest, which it is holding and identifiable.

141.    Germany is unconditionally liable and responsible for the payment of the bonds. Germany and paying agent JPMorgan cannot restrict, vary, or limit the payment to Plaintiff.

142.    JPMorgan received monies from the issuer Germany for payment to Plaintiff, Mr. Hassan Abbas, and the Young bondholders, and JPMorgan established the "Sinking Funds" as required by the terms of the Young bonds.

143.    JPMorgan has specifically received the funds from Germany, both Principal and Interest from the issuer Germany and these funds are identifiable and are designated for the payment of Mr. Hassan Abbas' bonds, as well as other Young bondholders.  JPMorgan has a legal obligation to redeem and pay the bonds as stated in the explicit terms of the bonds at the office of JPMorgan in Manhattan, New York to the bearer of the bonds.

144.    It matters not when the bonds were acquired by Plaintiff as these are bearer bonds and no such allegation is required in the complaint and it is not legally relevant to bearer bonds. Indeed, it is irrelevant when the bonds were bought, whether at the time of the issuance or later.

145.    As a direct and proximate result of Germany's default on the bonds, breach  of contract, and wrongful conduct and unjust enrichment, the Class Members' and the Plaintiff's property rights and interests, have been adversely affected, and Plaintiff, Mr. Hassan Abbas, and Class Members, have suffered substantial monetary damages and other damages.  As a direct and proximate result of Germany's wrongful conduct, the Plaintiff is entitled to restitution, and institution of a constructive trust, disgorging all profits, benefits, and compensation illegally obtained by Germany as a result of default and breach of obligations.

146.    WHISEFORE, Plaintiff Hassan Abbas, demands a jury trial, damages and judgment

against Germany for: (i) compensatory damages which meet and exceed the $75,000USD

jurisdictional requirements of this court, exclusive of interest, fees or costs, and which the

Plaintiff shall leave to the determination of the jury and/or ultimate trier of fact, (ii) Plaintiff

requests damages in the amount of $2,000,000 per bond based on the gold clause and the many

years of compound interest applicable; (ii) restitution from and institution of a constructive trust,

disgorging all profits, benefits, and other compensation unlawfully obtained by Germany, and

attorney's fees, interest, exemplary damages for bad faith and intentional default, and costs, and

as the Court may deem just and proper.


### COUNT XI

### VIOLATIONS OF THE UNIFORM COMMERCIAL CODE
### BY GERMANY AND JP MORGAN

147.    A bearer bond is a "bond payable to the person holding it. The transfer of possession

transfers the bond's ownership." BLACK'S LAW DICTIONARY at 190 (8* Ed. 2004); *see also,*

UNIFORM COMMERCIAL CODE at p. 480 (5' Ed. 2000, White & Summers, Editors) (§13-6, Liabilities

of Parties to a Negotiable Instrument) (a bearer instrument "becomes payable to bearer and may be

negotiated by transfer of possession alone").  The Young bonds are bearer bonds and have the place

performance and payment as JPMorgan in the city of Manhattan New York.

148.    Plaintiff, as the bona fide holder of the bonds, is entitled to payment according to the

terms of the bearer bonds from the bonds' designated redemption and paying agent and obligor

and guarantor.   Germany and JPMorgan have information and documents that relate to Plaintiffs'

claims and have refused to provide proper redemption and payment information at the office JPMorgan in Manhattan, New York, and refused to pay Hassan Abbas for no legitimate reason and failed to pay the required principal and interest, and the bonds are validated the bonds i.e. were not in Germany in 1945.

149.     Germany and JPMorgan failed and refused to designate a person at JPMorgan to treat the Plaintiffs' claims relative to the bonds, and failed to provide redemption and payment information at JPMorgan who are responsible to redeem and pay the bonds of Mr. Hassan Abbas despite several requests for redemption and payment information in violation of the Uniform Commercial Code.

150.     Germany and JPMorgan know beyond doubt that Plaintiff's bonds are **bearer bonds** –
And as such no "proof of ownership" is required - as under the Uniform Commercial Code (UCC) which is honored worldwide and the U.S., and Illinois (810 ILCS 5), and New York, current holders of the gold bearer bonds, as bona fide purchasers and/or good faith holders in due course have the full right and title to the bonds and have the right to pursue their claims and to get paid despite the false and unproven German story of "looted" by "Russian soldiers in 1945".

151.     Plaintiff is a holder in due course and/or bona fide purchaser in good faith.  Germany's mendacious statements, reiterated by JPMorgan in prior proceedings, as to a concocted story of a "*bad list*" of bonds, and the spurious conditions imposed by Germany in the "validation scheme", and by the "Examining Agencies" – that Plaintiff as "bearer" of "bearer bonds" is required to show the location or "provenance" of a bond was outside Germany in 1945 before redemption and payment – is irrational, stupid, inane and silly – and violates the Uniform Commercial Code.

        **U.C.C. Article 1** – General Provisions – Part 2, § 1-201 (5) states that: "Bearer" means the person in possession of an instrument, document title, or certificated security payable to

bearer, or indorsed in blank.  UCC – Article 1 - §1-201(19) states that: "Good faith" means honesty in fact in the conduct or transaction concerned.

**810 ILCS 5/8-102(2)**, Illinois Uniform Commercial Code, Revised Article 8, Investment Securities states that: "Bearer form" as applied to a certificated security, means a form in which the security is payable to the bearer of the certificate according to its terms, not by reason of an endorsement.

**Section 8-301** - Uniform Commercial Code states: *"A bona fide purchaser is 'a purchaser for value, in good faith and without notice of any adverse claim'. "The most common situation in which a bona fide purchaser will assert his rights is with respect to lost or stolen securities. **If a stolen security is delivered to a bona fide purchaser, the bona fide purchaser will prevail against even the 'true owner'. In other words, the bona fide purchaser, like the holder in due course, acquires good title to a security even though the transfer was wrongful and made by a party who had voidable title to the security.** This also means that the transfer of a stolen security by a bona fide purchaser does not breach the warranty that a transfer was effective and rightful."* **Section 8-301:02** Uniform Commercial Code – **Rights of a bona fide purchaser** - Investment Securities, Article 8, P. 184.

**Section 8-302** of the Uniform Commercial Code states that: "Although section 8-301 enumerates the rights of a bona fide purchaser, the term is defined in §8-302: *To be a bona fide purchaser, one must be: (1) a purchaser, (2) for value, (3) in good faith, (4) without notice of any adverse claim, (5) who takes delivery of a security in bearer form or in registered form issued to him or endorsed to him or in blank…Of course even if the purchaser is not a bona fide purchaser, he may be 'sheltered' to the rights of a bona fide purchaser under Section 8-301.* Section 8-302:02 Uniform Commercial Code - General – Investment Securities, Article 8, P. 195.

**Subsection 1-201(32)** of the Uniform Commercial Code defines *"purchase"* as including: *"taking by sale, discount, negotiation, mortgage, pledge, lien, issue or reissue, gift, or any other voluntary transaction creating an interest in property… **The purpose of the bona fide purchaser rule is to protect innocent purchaser, and encourage the sale and transferability of securities**."*

152.    Germany and JP Morgan failed to provide meaningful and proper redemption and

payment information and procedures for Plaintiffs' bonds.   The person or entity physically

holding or in possession of the bond i.e. *the bearer* is entitled to make a claim and payment.

153.    Additional relevant passages of the Uniform Commercial Code relative to bearer bonds

state that: *"If a security is in bearer form, it is negotiated by delivery alone; any person in

possession of the security is a holder and has the right to transfer it to another by mere delivery.

Any purchaser of a security in bearer form, who takes delivery of the security and meets the other

requirements of section 8-302, will become a bona fide purchaser. This is true even if the security is transferred to the purchaser by the thief.

154.    To the present date, Germany and JPMorgan have never made any report or submitted any proof of any specific bonds (i.e. by description and/or serial number) as being "stolen". Since the fall of Berlin, when the Russians entered the city in 1945, no German authority has ever reported any specific bond(s) (by number) as "stolen". The story is a fabrication and has been admitted that it is not true by Germany's own examining agent, Mr. Ingrid Jaeger, who is the designated "examiner" of the Young bonds, during a deposition in which she conceded that bonds were never stolen and recirculated by Russians but were in Reichsbank in East Berlin and Germany recovered all the bonds on or before reunification in 1990.  That false story has to be put to bed by the courts who are also repeating the unsubstantiated story without any iota of proof or evidence by Germany and simply based on hearsay.

155.    Plaintiff and Class Members, are the legal and equitable owners of the German gold bearer bonds at issue herein, and the bondholders in possession of German gold bearer bonds, qualify as bona fide purchaser, in good faith, for value without notice of any adverse claim and Plaintiff  Mr. Hassan Abbas is entitled to redeem the bearer bonds and obtain payment.

156.    Germany and JPMorgan have not produced one iota of credible evidence for their false assertion that "*bonds were looted by Russian soldiers*". The myth and falsehood has persisted for decades - unchallenged and unchecked - but that does not mean it is factual or true, it remains false and misleading. There is no trustworthy and reliable evidence of any theft, only hearsay and false and unconfirmed reports.

157.     Germany refuses to produce the "bad list" of allegedly "stolen" bonds in any Court of law and refuses to produce the alleged list to the Securities and Exchange Commission, in reality, it has none and this was confirmed by testimony during Senate hearings - that no "list" is available.

158.     The US State Department has also taken the position that information relative to *allegedly looted* bonds is "fragmentary and inconclusive". Germany falsely claims that 300,000 bonds were looted, and now has a "bad list" that can *conclusively* identify *looted bonds*. Germany has perpetrated this fraud and falsehood upon the bondholders, the courts and Congress and should be put to strict proof.

159.     The German government, or its related agencies, or the courts who have repeated the story or the references in agreements have never supported the contention that 300,000 bonds were stolen and recirculated by Russians, and no one has provided reliable or credible evidence. The German government continues to perpetuate its myth and false accounts of "looting".

160.     Germany and JPMorgan have not met their burden to show that even if bonds are arguably stolen, that under the Uniform Commercial Code and international law bondholders are not entitled to possession, redemption and payment of the bonds as holders in due course, or bona fide purchasers in good faith.  There is no legitimate reason for Germany or JPMorgan not to pay the bonds at the office of JPMorgan in Manhattan, New York as stated in the terms of the bonds.

161.     As a direct and proximate result of Germany's default on the bonds, conversion, breach of contract, and JP Morgan's wrongful conduct, conversion, and unjust enrichment, and failures as paying agent, and Defendant's statutory violations of the Uniform Commercial Code, the Class Members' and the Plaintiff's property rights and interests, have been adversely affected, and Plaintiff, Mr. Hassan Abbas, and Class Members, have suffered substantial monetary damages and other damages.

162.    As a direct and proximate result of Germany's and JPMorgan's wrongful conduct, the Plaintiff is entitled to restitution, and institution of a constructive trust, disgorging all profits, benefits, and compensation illegally obtained by Germany as a result of default and breach of obligations.

163.    WHISEFORE, Plaintiff Hassan Abbas, demands a jury trial, damages and judgment against Germany for: (i) compensatory damages which meet and exceed the $75,000USD jurisdictional requirements of this court, exclusive of interest, fees or costs, and which the Plaintiff shall leave to the determination of the jury and/or ultimate trier of fact, (ii) Plaintiff requests damages in the amount of $2,000,000 per bond based on the gold clause and the many years of compound interest applicable; (ii) restitution from and institution of a constructive trust, disgorging all profits, benefits, and other compensation unlawfully obtained by Germany, and attorney's fees, interest, exemplary damages for bad faith and intentional default, and costs, and as the Court may deem just and proper.

## COUNT XII

### CLASS ACTION ALLEGATIONS

164.    This action is brought and may be properly maintained as a Class Action pursuant to the provisions of the Federal Rules of Civil Procedure 23, F.R.C.P. 23 (b) (1), (2) and (3).

165.    This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of the provisions. The Plaintiff brings this cause individually and on behalf of all members of the proposed Class who are similarly situated bondholders.

166.    The Class is defined as: *"All individuals and/or entities who currently own or possess German gold bonds known as the Young bonds or their predecessors, heirs, successors, assigns, or representatives of owners or bondholders, and whose bonds have never been redeemed and/or*

39

*paid and/or validated and/or for which no payment has ever been made by Germany or JPMorgan."*

167.    Included in the Class are those bondholders who did not accept the German settlement "offer" contained in the London Debt Agreement 1953 and did not subscribe to the "validation" schemes; and/or whose bonds were never exchanged, enfaced, redeemed, or accepted for payment, and/or were never included in any contracts or agreements for redemption or payment with Germany or JPMorgan. Also included in the Class are those bondholders who actually Submitted their bonds for "validation", and redemption and payment to Germany or JPMorgan, but whose bonds were not validated or paid after submission to examining agencies in Germany, or whose bonds were not returned by Germany or JPMorgan or whose bonds were misappropriated after submission, or whose bonds were returned after submission but have been tampered with by Germany or JPMorgan or the designated examining agents in Berlin or elsewhere and whose bonds were marked inappropriately rendering the bonds void pursuant to Germany's false and fabricated story of looted bonds with no proof.

168.    Members of the Proposed Class are so numerous and geographically dispersed as to make joinder of all Class Members in this action impracticable.

169.    The estimated number of bondholders is between 67,000 to 500,000. The bondholders are entitled to remedy and relief after years of deprivation by Germany and JPMorgan who conduct is effectively, conversion, and theft of Plaintiff's and bondholders' money.

170.    The claims of the named Plaintiff, are typical of the claims of the proposed bond Class, in so far as Plaintiff and Class Members, were damaged by the same wrongful conduct of Germany and JPMorgan alleged herein. The factual bases of Germany's and JPMorgan's misconduct is common to all Class Members, and represents a common thread of blatant breach of contractual

obligations, and/or unjust enrichment, and/or a fraudulent and deliberate default, and/or negligent misconduct or misrepresentations resulting in economic harm and injury to the Plaintiff, Mr. Abbas and the Class members.

171.    Defendants have acted and/or refused to act on grounds generally applicable to the Proposed Class, making injunctive relief, and/or correspondent declaratory relief, and /or other just relief, appropriate with respect to the Class as a whole, in that DEFENDANTS have been: (a) unjustly enriched; (b) refused meaningful redemption or payment of the bonds to the proposed Class Members; (c) refused to provide full and complete accounting and disclosure of the aforesaid actions; (d) refused access to information critical to Plaintiff/Class claims.

172.    A Class Action pursuant to the Federal Rules of Civil Procedure 23 is superior to the other available methods of fair, just and efficient adjudication of the controversy.  Individual litigation would be unduly burdensome to the courts where the individual litigations would proceed. This Class Action will allow a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and equitable handling of Plaintiff and Class claims.

173.    The conduct of this action as a Class Action conserves judicial resources of the parties and of the judicial system, and preserves the rights of each class member. Furthermore, a Class Action is for most class members the only feasible method that allows them any opportunity for legal redress and justice.

174.    The named Plaintiff, Mr. Hassan Abbas, is committed to vigorous prosecution of this action and will fairly and adequately protect the interests of the proposed Class. Plaintiffs have no conflict of interest with members of the proposed Class. Named Plaintiffs, and consenting members of the Class, are represented by a team of local and international lawyers who are experienced and competent.

41

175.     Common questions of fact and law predominate in the claims of all Class Members including the named Plaintiff. These claims show that Germany and JPMorgan are liable for payment of the German gold bearer bonds, pursuant to the explicit terms of the bonds, and the Defendants' acts and omissions based on common facts. The evidentiary showing of Plaintiff Hassan Abbas and the Class Members will be based on common bonds and common documents and common testimony relative to the German gold bearer bonds and there is similarity and commonality of Germany's and JPMorgan's actions or omissions.

176.     These are questions of fact and law common to Plaintiff and Class Members including, but not limited to, WHETHIS, GERMANY and/or JPMORGAN have:

a)     Been unjustly enriched by their acts and omissions.

b)     Defaulted on their bond obligations and/or converted the funds and principal and interest.

c)     Refused meaningful redemption or payment of the bonds in the U.S. or Germany.

d)     Refused to provide full and complete disclosure and pertinent information.

e)     Provided false or misleading statements relative to the worth (or lack thereof) of the bonds and/or false or misleading statements regarding the validity (or lack thereof) of the bondholders' claims and/or provided false or misleading statements regarding "looting of bonds by Russians" to Congress and the courts and bondholders with no proof and/or promoted or engaged in incompetent and fraudulent "validation" schemes with incompetent examining agencies who are not competent for the purpose of validation, redemption and/or payment of the bonds, all to the detrimental reliance and/or to the substantial damage of Plaintiff or bondholders.

f)     Failed to institute the necessary or reasonable protocols or to provide proper instructions to bondholders, and/or failed to provide redemption and payment institutions in the U.S. as required by law and failed to make payment to bondholders according to the terms of the bonds.

42

g)      Failed to take steps to protect Plaintiff or Class Members, bondholders, from conspiracies, and deprivation of rights and funds, and fraudulent and wrongful acts related to the German Gold Bonds, which fraudulent and wrongful acts, were known to Germany and JPMorgan.

h)      Knowingly, carelessly, recklessly and/or negligently participated in a scheme with false or unproven allegations of theft against Russia and hearsay and lies about looting and/or "bad lists" designed to frustrate and/or interfere with Plaintiffs, Class Members, and bondholders, ability to redeem the Bonds; and knowingly, carelessly, recklessly and/or negligently participated in an agreement, or conspiracy to defraud, in order to cause economic damage to Plaintiff or Class Members, and/or those who sought to redeem and obtain payment for their German Gold Bonds.

i)      Knowingly, carelessly, recklessly and/or negligently engaged in commission of fraud and/or conspiracy to commit fraud and/or deprived Plaintiff or Class Members of their constitutional rights, and/or engaged in wrongful or unlawful actions to foreclose redemption, "prohibit" payments, and impede the Plaintiff and Class Members rights to pursue claims or receive payment for the bearer bonds payable in the United States in Manhattan at JPMorgan.

j)      Engaged in racketeering activities, and/or wire and mail fraud, extortion; transported and sold securities and/or commercial instruments in the US and/or which caused direct affect in the US, in violation of 28 U.S.C. §1605 (a) (2) or 28 *U.S.C.A.* 1605 (a)(3) or other sections; participated and/or profited from the wrongful expropriation/taking in violation of International Law of property and funds belonging to the bondholders located in the U.S. and elsewhere.

k)      Caused economic loss/damage to Plaintiffs /Class Members which property located in the US and elsewhere, in violation of 28 USC 1605 (a); Violated the Holocaust Victims Redress Act of 1998 and National Stolen Property Act of 1994; and Violated the 1899, 1907, and 1930 Hague Convention, and violated the Universal Declaration of Human Rights, and violated international

43

law, and violated the London Debt Accord, 4 UST 443,  and violated the Certain Matters Treaty, 4 UST 885, and violated other Treaties and Jus Cogens, and violated the terms of the international loan contracts, i.e. Young bonds; and violated the European Convention on Human Rights, Art. 1, Protocol 1; and violated the Vienna Convention on the Law of Treaties 1969.

l)      Violated the President's message and intention to preserve the rights of the bondholders. In an April 10, 1953, *Message from the President* to the SENATE, Enclosure 7(a) annexed to the Hearings before the Committee on Foreign Relations - United States Senate Eighty Third (83rd) Congress, 1st Session on Executives D, E, F, G, June 17, 18, 1953, Page 204 – PRESIDENT of the UNITED STATES - DWIGHT D. EISENHOWER stated: "**It is important to note that the Agreement does not nullify the legal rights of creditors. Moreover, their right to sue in Non-German courts is not impaired**."

m)      Violated the 1953 Treaty optional "validation" procedures through a "Validation Board" – which requires and presupposes the existence of a "Validation Board" as mandated by the Second Implementing Ordinance and Validation Procedures treaty – which Germany intentionally closed the "Validation Board" and Defendants conceded the Validation Board is now obsolete in US and Germany – and thus the contemplated "validation" schemes and procedures are null and void. And this cancels out Defendants arguments relative to bondholders requirement for "validation" with defunct "validation boards" before filing suit. Validation is not a prerequisite to adjudication.

n)      Violated Congressional intent and statute to wit: The Corporation of Foreign Security Holders Act, 1933 (15 USC 77bb-77mm), and the Treaty 1953, and *Abrey v. Reusch*, 153 F. Supp. 337 (S.D.N.Y. 1957) which confirms the US federal courts have power and jurisdiction to hear matters relative to bonds, securities in default, to protect the interests of bondholders.

o)      Violated the applicable terms and conditions of the 1953 Treaty or Second Implementing Ordinance, thus making Validation impossible in the United States or Germany with any "Validation Board" which does not exist anywhere.

p)      Violated the German laws and 1953 U.S. treaties due to the fraud and/or lack of competency of the "Examining Agency" or "ZivilKammer" or "Settlement Chamber" who are not competent for the purpose of validation and not constituted in accordance with the 1953 treaties or German validation law 1952 and due to the lack of proper authority.

q)      Violated due process and the terms of the bonds by imposing irrational, arbitrary and capricious conditions based on fabrications and an unsubstantiated false story of looted bonds and due to the lack of competency of the "examining" entities in Germany – "validation" is not possible within any reasonable meaning of 1953 Treaty or law, in Germany, or United States.

r)      Violated the 1953 Treaty - which is non-self-executing and not applicable domestically in the United States – but even if it were "self-executing" then Germany must establish the Validation Board in New York, today before tomorrow, because the treaty requires a U.S. based Validation Board and the "*Examining Agency*" is **not the same** as a "Validation Board". The "Validation Board" was required to have an "American", a "German" and a "third" neutral from a different country member acting as "umpire" – in order to preserve the neutrality, and impartiality, and fairness of the "Validation Board" hearings, and were conducted in the United States in English. These essential procedural elements are wholly lacking in the alleged "Examination Agencies" such as the "Prufstelle fur Auslandbonds" – BADV in Berlin relative to the Young bonds.  The alleged "Examining Agency" are incompetent and consist of Germans only who are biased against American and other bondholders and do not have the neutrality and fairness of a New York based and multi-national "Validation Board".

45

s)      Violated the due process rights of Plaintiff and/or class members and do not allow witnesses or experts to value bonds and did not provide fair procedures for redemption and payment of the bonds in the United States or before a "Examining Agency" which is not a competent authority for the purpose of validation and is not neutral and is not fair.   The Examining Agencies are engaged in fraud and numerous false misrepresentations directed to Plaintiff and/or class members, and cannot "validate" bonds and do not provide meaningful redemption information, secure and viable or competent payment procedures of bonds and do not properly engage the redemption and payment of the bonds and instead apply whatever bias or rationale they can muster to justify a predetermined outcome and to ultimately foreclose redemption and payment and wrongfully deny redemption and "prohibit" payment of bonds and the "Examining Agencies" use misrepresentations, fraud, and arbitrary and capricious criteria.

**CONCLUSION**

In the final analysis, Germany is the debtor in default on his bond obligations and Germany is the unconditional obligor on Plaintiff's bearer bonds which are payable by and at JPMorgan in Manhattan, New York, which has breached its duties as Paying Agent on the bonds.

Mr. Hassan Abbas respectfully seeks the court's intervention to protect his rights and to recover his money i.e. principal and interest owing to his (and other bondholders similarly situated) pursuant to the explicit and unconditional terms and within the "four corners" and language of the German gold bearer bonds.  Plaintiff seeks justice and equity and to prevent the unjust enrichment of Germany and JPMorgan.

There is no reason why the courts should give Mr. Hassan Abbas' money to Germany or JPMorgan, and there is no reason to allow Germany and JPMorgan to convert the Plaintiff's funds by way of irrational rules, or unconstitutional German regulations which do not apply in

the United States, or by way of a non-self-executing treaties, such as the 1953 Treaty, that does not give rise to enforceable domestic law in the United States and is inapplicable and where Congress has not implemented any such legislation to deprive bondholders of their rights. The court may affirm Germany's liability as dictated by international law which requires a nation state to honor his sovereign debt towards private individuals and/or may affirm liability on Germany and JPMorgan on the multiple bases provided in the various causes of action herein.

Respectfully submitted,
*For Plaintiff*,

Hassan A. Abbas, B.A., J.D.
Attorney and Counselor at Law – ARDC No. 6206474
19 Don Carlos Drive - Hanover Park, Illinois 60133
Tel. 312-999-5588 / Fax 312-264-0444
Email: ha.law@hotmail.be